COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

JERRY MILLER,                                                  )

                                                                              )             
No.  08-03-00268-CR

Appellant,                          )

                                                                              )                    Appeal from the

v.                                                                           )

                                                                              )      
County Criminal Court at Law #1

THE STATE OF TEXAS,                                     )

                                                                              )           
of El Paso County, Texas

Appellee.                           )

                                                                              )              
(TC# 20010C16034)

                                                                              )

 

 

O
P I N I O N

 

Jerry Miller
appeals his conviction for driving while intoxicated.  A jury found Appellant guilty of the charged
offense, and the trial court assessed punishment at 180 days= imprisonment probated for 18 months
together with a $1,000 fine.  Finding the
evidence sufficient to support the verdict, we affirm.

FACTUAL
SUMMARY








On the evening of
October 17, 2001, Johnny Rivers was at his home in the 4100 block of O=Keefe Drive in El Paso when he noticed
a Dodge Durango pull in front of his house and stop.  The front end of the Durango was pointed out
into the street with the rear end facing the curb.  Rivers went outside, wondering who it
was.  He watched the vehicle but no one
exited.  Rivers then got in his own
truck, backed down the driveway, and looked at the vehicle.  He drove up O=Keefe
and flashed his lights on high beam, but he could not see anyone inside the
vehicle.  He did notice that the vehicle
was still running.  He then went back
inside and told his girlfriend to call the police.

Officers Paul
Ramsey and Curtis Hamilton were dispatched to the scene around 10:20 p.m. in
response to a suspicious vehicle.  They
found a white Dodge Durango approximately six feet from the curb  facing northeast  with its brake lights activated.  The street was uphill, undivided, and
approximately one-fourth wider than a normal residential street.  

The officers
spotted Appellant slumped over to the right side in the driver=s seat. 
Officer Ramsey approached the driver=s
side and tried to get Appellant=s
attention by knocking on the window and shining his flashlight in Appellant=s face. 
Hamilton went to the passenger side of the vehicle.  When there was no response from Appellant,
Ramsey knocked harder and louder and then opened the driver=s side door.  Ramsey immediately detected the odor of alcohol.  He shook Appellant=s
arm two times, and Appellant woke up.  He
sat up in the seat, moving his feet and causing the brake pedal to be released
so that the vehicle moved forward about five feet.  Ramsey told Appellant to stop the vehicle and
he reached inside to put the gear in park.[1]  Ramsey identified himself as an officer, and
Appellant answered, AI
don=t do cops.@  Ramsey was concerned about the statement and
did not believe he was joking.  Appellant
explained that he meant he would not give the officers any trouble.  








Officer Ramsey
described Appellant=s hair as
mussed and his appearance disheveled. 
Hamilton characterized him as disoriented.  Ramsey had Appellant exit the vehicle and
confirmed that the odor of alcohol was coming from Appellant=s person.  The officers were not able to determine the
precise beverage from the smell. 
Appellant had red, glassy eyes and slurred speech, his balance was
unsteady, and he had to place his hands on the vehicle twice when walking to
the back of it.[2]

Appellant told
Ramsey that he was coming from Coronado Country Club where he had consumed two
glasses of Cabernet.  He was on his way
to a friend=s house
on Excalibur but had taken a wrong turn. 
He pulled over to catch a cat nap when he became sleepy.  He angled the car toward the edge of the curb
to prevent it from rolling, put it  in
park, locked the doors, and left the air conditioning running.  

Ramsey believed
that Appellant was intoxicated and instructed Officer Hamilton to conduct field
sobriety tests.  Appellant refused to
take the tests.  Ramsey looked at the
vehicle and found no damage.  He also
found no damage to mailboxes in the area. 


Officer Hamilton
tried to frisk Appellant, but he was not standing in the proper manner.  Hamilton then placed his hand on Appellant=s belt. 
The officers asked Appellant to spread his feet apart numerous
times.  Finally, Hamilton did it for
him.  Appellant lost his balance and fell
into the back of the vehicle.  As he
dropped to the ground, he was yelling, ABeat
me like I=m Rodney
King.@[3]








Appellant was
arrested, handcuffed, and placed in the patrol car.  He slept during the ride to the station.  He was awakened upon arrival and placed in a
holding cell where he again fell asleep. 
Awakened once more, Appellant was taken to the videotaping room where
the requisite warnings and sobriety tests were administered.  Ramsey did not know of a medical condition but
he recalled that Appellant was taking a medication called ADarson.@  Appellant testified that he took ADapsone,@
not ADarson,@ to treat a skin condition.  He also regularly took Skelaxin, a muscle
relaxant, Celebrex, and Tylenol.  Skelaxin
was taken for his chronic back pain. 
Although Appellant denied that the medications had any effect on his
faculties, he did admit that Skelaxin could make a patient sleepy and this
could be exacerbated by alcohol use. 
Appellant had taken three pills that morning.

Officer Ramsey
testified that while bloodshot eyes are not an indicator of intoxication,  slurred speech, posture, odor of alcohol, and
balance are.  Passing out at the wheel is  another indicator.  Hamilton added that he would not expect a person
with normal use of his mental faculties to fall asleep in a running vehicle in
the middle of a street.  On the other
hand, Appellant testified that he is a cardiologist who works long irregular
hours.  It was not unusual for him to
pull over to sleep.








The officers
testified that Appellant told them he had no medical problems or injuries which
would interfere with his performance on the tests.  At trial, Appellant described his back pain
and explained his previous knee surgery. 
He admitted that he never told the officers of his condition, but
claimed he was never asked.  Hamilton
admitted that such conditions could invalidate the results of the tests.  In fact, the tests are not recommended if the
performer has a bad back or knees.  Appellant
was given an opportunity to provide a breath sample but refused.[4]  He claimed he was not offered a blood test
but admitted he did not offer to provide one. 


The testimony also
differed as to the sobriety testing. 
Officer Hamilton explained Appellant=s
performance on the walk and turn test. 
Appellant was required to stand in a particular posture while he was
read the instructions.  Instead,
Appellant was swaying slightly side to side. 
He claimed he simply refused to stand in an uncomfortable position.  Both Hamilton and Ramsey described the four
clues on the one-leg stand test. 
Appellant was swaying badly, using his arms for balance, and putting his
foot down.  Hamilton observed three out
of four clues.  Appellant maintained he
was merely sleepy and that he was scared of losing his medical license.  

SUFFICIENCY
OF THE EVIDENCE








In four points of
error on appeal, Appellant challenges the legal and factual sufficiency of the
evidence to support his conviction.[5]  He argues first that there was insufficient
evidence to show he drove or operated a motor vehicle.  He then contends that the evidence was
insufficient to show that his mental or physical faculties were impaired.  He offers the following defensive
theories:  (1) the officers did not
ascertain whether Appellant had any limitations which would affect the outcome
of the field sobriety tests; (2) there were insufficient indicators of
intoxication at the scene; (3) the officers did not know what alcoholic
beverage he had consumed and his testimony regarding how much he drank and when
he drank it was not contradicted; and (4) indicators such as bloodshot eyes and
a disheveled appearance were explained by his sleeping.

                                                              Standard
of Review

In reviewing the
legal sufficiency of the evidence to support a criminal conviction, we must
review all the evidence, both State and defense, in the light most favorable to
the verdict to determine whether any rational trier of fact could have found
the essential elements of the offense beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 318‑19,
99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); Geesa v. State, 820
S.W.2d 154, 159 (Tex.Crim.App. 1991), overruled on other grounds, Paulson
v. State, 28 S.W.3d 570 (Tex.Crim.App. 2000).  This familiar standard gives full play to the
responsibility of the trier of fact fairly to resolve conflicts in the
testimony, to weigh the evidence, and to draw reasonable inferences from basic
to ultimate facts.  Jackson, 443
U.S. at 319, 99 S.Ct. at 2789, 61 L.Ed.2d at 573.  We do not resolve any conflict of fact or
assign credibility to the witnesses, as it was the function of the trier of
fact to do so.  See Adelman v. State,
828 S.W.2d 418, 421 (Tex.Crim.App. 1992); Matson v. State, 819 S.W.2d
839, 843 (Tex.Crim.App. 1991).  Instead,
our duty is only to determine if both the explicit and implicit findings of the
trier of fact are rational by viewing all of the evidence admitted at trial in
a light most favorable to the verdict.  Adelman,
828 S.W.2d at 422.  In so doing, any
inconsistencies in the evidence are resolved in favor of the verdict.  Matson, 819 S.W.2d at 843.  Further, the standard of review is the same
for both direct and circumstantial evidence cases.  Geesa, 820 S.W.2d at 158. 








In reviewing
factual sufficiency of the evidence to support a conviction, we are to view all
the evidence in a neutral light, favoring neither party.  Johnson v. State, 23 S.W.3d 1, 7
(Tex.Crim.App. 2000); Clewis v. State, 922 S.W.2d 126, 129
(Tex.Crim.App. 1996).  Evidence is
factually insufficient if it is so weak that it would be clearly wrong and
manifestly unjust to allow the verdict to stand, or the finding of guilt is
against the great weight and preponderance of the available evidence.  Johnson, 23 S.W.3d at 11.  Therefore, the question we must consider in
conducting a factual sufficiency review is whether a neutral review of all the
evidence, both for and against the finding, demonstrates that the proof of
guilt is so obviously weak as to undermine confidence in the fact finder=s determination, or the proof of guilt,
although adequate if taken alone, is greatly outweighed by contrary proof.  See id.  In performing this review, we are to give due
deference to the fact finder=s
determinations.  See id. at 8‑9;
Clewis, 922 S.W.2d at 136.  The
fact finder is the judge of the credibility of the witnesses and may Abelieve all, some, or none of the
testimony.@  Chambers v. State, 805 S.W.2d 459, 461
(Tex.Crim.App. 1991).  Consequently, we
may find the evidence factually insufficient only where necessary to prevent a
manifest injustice from occurring.  See
Johnson, 23 S.W.3d at 9, 12; Cain v. State, 958 S.W.2d 404, 407
(Tex.Crim.App. 1997). 

Driving
While Intoxicated

A person commits
the offense of driving while intoxicated if the person is intoxicated while
operating a motor vehicle in a public place. 
Tex.Pen.Code Ann. ' 49.04(a)(Vernon 2003); Tex.Pen.Code Ann. ' 49.09(c)(Vernon Supp. 2004-05).  ATo
find operation under [the DWI] standard, the totality of the circumstances must
demonstrate that the defendant took action to affect the functioning of [the]
vehicle in a manner that would enable the vehicle=s
use.@  Denton v. State, 911 S.W.2d 388, 390
(Tex.Crim.App. 1995).  While driving
involves operation, operation does not necessarily involve driving.  Denton, 911 S.W.2d at 389.








AIntoxication@
is statutorily defined as:  (A) not
having the normal use of mental or physical faculties by reason of the
introduction of alcohol, a controlled substance, a drug, a dangerous drug, a
combination of two or more of those substances, or any other substance into the
body; or (B) having an alcohol concentration of 0.08 or more.  Tex.Pen.Code
Ann. ' 49.01(2)(A)(B).  Appellant was charged with intoxication by
not having the normal use of his mental and physical faculties.

                                                       Was
He Operating the Car?

Officers Ramsey
and Hamilton came upon Appellant=s
Durango as he was sitting slumped over in the driver=s
seat, asleep, with the engine running and the brake lights engaged.  The vehicle was on a residential street
approximately six feet from the curb, blocking the roadway.  When the officers finally awakened Appellant,
his foot left the brake pedal and the vehicle lurched forward.  Officer Ramsey told Appellant to stop but had
to reach inside the car to put it into park. 
We conclude that Appellant was operating a motor vehicle.  See Denton, 911 S.W.2d at 390; see,
e.g., Hearne v. State, 80 S.W.3d 677, 679‑81 (Tex.App.‑-Houston
[1st Dist.] 2002, no pet.)(holding evidence of operation legally and factually
sufficient where truck was in moving lane of traffic on service road to
highway, with engine running, gearshift Ain
park,@ and driver
was alone); Freeman v. State, 69 S.W.3d 374, 375 (Tex.App.-‑Dallas
2002, no pet.) (holding evidence of operation legally and factually sufficient
where SUV=s motor
was running, gearshift was in the Adrive@ position, lights were on, right front
tire was resting against a curb of a public street, and driver was asleep at
the wheel). 

                                                             Was
He Intoxicated?













The record as a
whole also illustrates that ample proof of Appellant=s
intoxication was offered to the jury. 
Officers found Appellant slumped over in the driver=s seat of his vehicle asleep.  It was difficult to awaken him.  His was mussed, his appearance disheveled,
his eyes bloodshot, and his speech slurred. 
Officer Ramsey also smelled alcohol and confirmed the smell was coming
from Appellant=s person.  Appellant told the officer he had come from
the country club where he had drunk two glasses of wine.  His balance was unsteady and he braced
himself on the vehicle while walking to the rear.  He was uncooperative when Officer Hamilton
tried to frisk him, and when he lost his balance and fell during the frisk,
Appellant yelled, ABeat me
like I=m Rodney
King.@  Appellant refused to perform field sobriety
tests at the scene.  On the way to the
station and again in the holding cell, Appellant fell asleep.  He refused to give a breath sample and
performed poorly on the sobriety tests conducted at the station.  Officer Hamilton found three of four clues on
the one leg stand test, and Appellant refused to properly complete the walk and
turn test.  Even if Appellant=s performance on the sobriety tests
could be invalidated due to his alleged physical incapacities, it was within
the province of the jury to disbelieve his testimony regarding his back and
knee problems and to believe the officers=
testimony that they knew of no physical limitation which would have prevented
Appellant=s
performance of the tests.  Appellant also
argues that no evidence of blood alcohol concentration levels from two glasses
of wine was presented at trial.  However,
the State did not charge Appellant under the second prong of Aintoxication@
dealing with blood alcohol level but under the loss of faculties
provision.  The officers testified they
believed Appellant had a loss of use of his mental and physical faculties at
the scene.  Finally, while Appellant
argued that bloodshot eyes or a disheveled appearance did not show
intoxication, the jury obviously found that Appellant=s
bloodshot eyes and disheveled appearance coupled with his slurred speech,
unsteady balance, and uncooperativeness and the fact officers found him in a
running car in the middle of a roadway provided sufficient evidence of his
intoxication.

Viewing all of the
evidence in the light most favorable to the verdict, a rational jury could have
concluded beyond a reasonable doubt that Appellant was intoxicated in that he
had lost the normal use of his mental or physical faculties at the time
Officers Ramsey and Hamilton encountered and arrested him.  See, e. g., Fogle v. State, 988
S.W.2d 891, 893 (Tex.App.-‑Fort Worth 1999, pet. ref=d)(holding evidence legally sufficient
to support finding of intoxication by reason of introduction of alcohol and
loss of normal use of mental and physical faculties); Reagan v. State,
968 S.W.2d 571, 572‑73 (Tex.App.-‑Texarkana 1998, pet. ref=d)(holding evidence of alcohol odor on
defendant=s breath
and defendant=s poor
performance of field sobriety tests legally sufficient to support DWI conviction
due to defendant=s loss of
normal use of mental and physical faculties).

Likewise, viewing
the evidence in a neutral light and giving due deference to the jury=s responsibility to resolve conflicts
in the evidence, we cannot say that the jury=s
verdict is against the great weight of the evidence.  See, e. g., Fogle, 988 S.W.2d
at 893‑94 (holding evidence of defendant=s
loss of mental and physical faculties factually sufficient to support DWI
conviction); Reagan, 968 S.W.2d at 572‑73 (holding evidence of
defendant=s loss of
mental and physical faculties factually sufficient to support DWI
conviction).  We conclude that the
evidence was both legally and factually sufficient to support the jury=s verdict.  The four points of error are overruled and
the judgment of the trial court is affirmed.

 

February
17, 2005

DAVID WELLINGTON
CHEW, Justice

 

Before Panel No. 3

Barajas, C.J., Larsen, and Chew, JJ.

Larsen, J., Not Participating

 

(Do Not Publish)











[1]
Appellant testified that he rolled down the window and that it was the officer
who knocked the vehicle out of park when trying to retrieve the keys.





[2]
Appellant claimed he stepped on some rocks which caused him to lose his
balance.  





[3]
Rivers had come back outside when the officers arrived.  Although he testified that the officers took
no violent or aggressive actions and assisted Appellant in getting back up,
Appellant claimed the officer kicked his feet out from underneath him.





[4]
Appellant believed that breath test results were unreliable since the
breathalyzer was not calibrated on a per use basis.





[5]
In Point of Error One, Appellant complains that the trial court should have
directed the verdict since the evidence was legally insufficient to show
Appellant was driving while intoxicated. 
In Point of Error Two, he complains that the trial court should have
directed the verdict since the evidence was factually insufficient.  In Point of Error Three, he argues that the
trial court erred in receiving the jury=s
verdict of guilty.  In Point of Error
Four, he challenges the sufficiency of the evidence to support his conviction.  He has addressed all four points together, as
shall we.